```
        IN THE UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,     )
                              )
            Plaintiff,        )      8:03CR290
                              )
     v.                       )
                              )
STERLING MCKOY,               )      MEMORANDUM OPINION
                              )
            Defendant.        )
_____)
```

This matter is before the Court on the following motions of the defendant:

      1) Motion for new trial (Ground #3) (Filing No. 330);

      2) Motion for leave to amend motion for new trial (Ground #1) (Filing No. 331);

      3) Motion to vacate, set aside, or correct sentence by person in federal custody under 28 U.S.C. § 2255 (Filing No. 334);

      4) Motion for leave to amend motion for new trial (Ground #1) (Filing No. 335);

      5) Amended motion for appointment of counsel (Filing No. 337);

      6) Motion for leave to proceed *in forma pauperis* (Filing No. 338);

      7) Motion for new trial (Ground #1) (Filing No. 343);

      8) Motion for new trial Ground #2) (Filing No. 344);

> 9) Motion for leave to amend motion for new trial (Ground #3) (Filing No. 345);
>
> 10) Motion to vacate, correct or set aside sentence (Filing No. 346).

Having reviewed the motions, defendant's submissions, and the applicable law, the Court finds that defendant's motions to amend (Filing Nos. 331, 335 and 345) should be granted. Defendant's motions for new trial (Filing Nos. 330, 343 and 344 as amended), defendant's motions to vacate, correct or set aside sentence (Filing Nos. 334 and 346), and motion for appointment of counsel (Filing No. 337) and defendant's motion to proceed *in forma pauperis* (Filing No. 338) should all be denied.

**FACTS**

On June 2, 2004, a jury found the defendant, Sterling McKoy, guilty of conspiracy to distribute 50 or more grams of cocaine base. The Court sentenced McKoy to 360 months imprisonment, 5 years of supervised release and a special assessment in the amount of $100.00. McKoy appealed his sentence and conviction to the Eighth Circuit Court of Appeals, and following the decision in *United States v. Booker*, 543 U.S. 220 (2005), the parties filed a joint motion to remand for sentencing. The Court re-sentenced McKoy to 300 months imprisonment. On December 13, 2005, the Eighth Circuit affirmed

his conviction and sentence, and on December 29, 2005, denied his motion for rehearing.

McKoy moves for a new trial pursuant to Fed. R. Crim. P. 33(b)(1) based on allegedly newly discovered evidence, seeking an evidentiary hearing to examine the evidence and/or a new trial. McKoy claims that since his trial, he has become aware that three witnesses -- Birdine, Henderson and Officer Gassaway -- provided perjured testimony that was the result of prosecutorial misconduct in that the government knew or should have known that the testimony was perjured. In addition, McKoy directs the Court to affidavits from Ms. Frankie Shaw and Ms. Tristan Bonn which discuss a petition which was circulated in July or August 2004 alleging that Officer Jeffrey Gassaway was unethical and corrupt and seeking an investigation of Officer Gassaway (Ex. B & C to Filing No. 343). These affidavits were signed in March and April 2007. McKoy also directs the Court to several published court cases involving Officer Gassaway where evidence was suppressed, asserting that these cases signify a pattern of misconduct by Officer Gassaway that would lead a jury to question any case, such as McKoy's, in which Officer Gassaway was involved.[1]

---

[1] At least one case involved Officer George Collins as well as Officer Gassaway, both of whom were involved in the stop and arrest of McKoy. See *United States v. Damper*, 347 F. Supp.2d 689 (D. Neb. 2004).

As to his motions to vacate under § 2255, McKoy asserts that counsel was ineffective in several ways, most notably in the failure to call witnesses sought by McKoy, the failure to effectively cross examine some witnesses and the failure to object to the prosecution "vouching" for Kevin Birdine.

**DISCUSSION**

A.   New Trial

"Five pre-requisites must be met in order to justify a new trial based upon newly discovered evidence: '(1) the evidence must in fact be newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.'"  *United States v. Womack*, 191 F.3d 879, 886 (8th Cir. 1999) (citing *United States v. Luna*, 94 F.3d 1156, 1161 (8th Cir. 1996)).  Furthermore, "[m]otions for a new trial based on newly discovered evidence are disfavored." *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001).

Birdine

McKoy asserts that Birdine committed perjury in his testimony in McKoy's trial based on discrepancies between Birdine's trial testimony and his earlier proffer statements as

well as discrepancies between his trial testimony in this case and his subsequent testimony in the trial of Rommell Smith.

The proffer statements are not newly discovered evidence, and they are not grounds for a new trial. Further, Birdine has denied committing perjury in his own affidavit, obtained on February 5, 2007 (Filing No. 321, Ex. 1). While Birdine's testimony in the Smith case was not a carbon copy of his testimony against McKoy, the differences do not support a suggestion of perjury.

<u>Henderson</u>

McKoy asserts that Henderson also committed perjury in his testimony in McKoy's trial based on discrepancies between his trial testimony and his earlier proffer statements as well as discrepancies between his trial testimony in this case and his subsequent testimony in the trial of Rommell Smith.

The proffer statements are not newly discovered evidence, and they are not grounds for a new trial. Further, while Herderson's testimony in the Smith case was not a carbon copy of his testimony against McKoy, the differences do not support a suggestion of perjury.

<u>Officer Gassaway</u>

McKoy asserts that Officer Gassaway committed perjury when he testified to his opinion that he had not known proffering witnesses to "have lied on other people." McKoy has failed to

-5-

establish that anyone has lied in a proffer statement.  Further, even if he had established that a specific person had lied in their proffer, this does not make Officer Gassaway's contrary opinion perjurious.  Finally, McKoy produces no "new evidence" to support his assertion as to Officer Gassaway.  Thus, this claim fails to provide sufficient grounds upon which to grant a new trial.

<u>Shaw and Bonn Affidavits</u>

McKoy next presents the affidavits of Shaw and Bonn, asserting that these constitute new evidence justifying his request for a new trial.  While these affidavits are new, as they were signed in March and April 2007, they refer to the circulation of a petition in July and August 2004 which is not newly discovered evidence.  Further, even if the petition did constitute newly discovered evidence, the petition does not evidence any bad acts of Officer Gassaway, but merely purports to be a request for an investigation of Officer Gassaway by some members of the North Omaha community.  A request for an investigation is not evidence of anything that would provide grounds for the granting of a new trial.  The Shaw and Bonn affidavits fail to provide sufficient grounds upon which to justify the granting of McKoy's motion for new trial.

"Absent exceptional circumstances, a motion for new trial based on newly discovered evidence may be decided on

affidavits without a hearing." *Dogskin*, 265 F.3d at 687.  With respect to Birdine's and Henderson's testimony, they were only two of seven cooperating witnesses who testified.  The testimony of these cooperating witnesses was quite consistent and overwhelmingly supports the jury's finding of guilt.  The Court finds no exceptional circumstances in this case.  Accordingly, the Court will deny defendant's motions for a new trial (Filing Nos. 330, 343, 344, 345) pursuant to Fed. R. Crim. P. 33.

**B.   Ineffective Assistance of Counsel**

McKoy asserts that counsel was ineffective in several ways, most notably the failure to call witnesses sought by McKoy both at trial and at the pre-trial suppression hearing and in failing to request that the Court reconsider its ruling in regard to the motion to suppress during trial; the failure to effectively cross examine and properly impeach the testimony of Kevin Birdine; the failure to object to the prosecution's "vouching" for Kevin Birdine; failure to challenge jury Instruction No. 12 as overbroad; failure to challenge drug quantity calculations at sentencing; failure to investigate Officer Gassaway and asserted prior bad acts by Officer Gassaway, including threats made by Officer Gassaway to potential witnesses; failure to object to questions from the jury and the judge at trial.

1.   **Standard for Ineffective Assistance of Counsel Claims.**

The United States Supreme Court has long recognized the Sixth Amendment right to counsel is necessary to protect the fundamental right to a fair trial. *Strickland v. Washington,* 466 U.S. 668, 684 (1984). This right to counsel is "the right to effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)). An ineffective assistance of counsel claim has two components: (1) the defendant must show that counsel's performance was deficient; and (2) the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687. Although in some situations prejudice is presumed, the defendant has not articulated any of those instances in his motion or brief. *See id.* at 692 (discussing generally the contexts in which prejudice is presumed). Therefore, the defendant must satisfy not only the "deficient performance" component of the *Strickland* test, but he must also make a showing of how any such deficiencies prejudiced his defense.

In evaluating the first element of the *Strickland* test, the Court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case. Once the defendant has identified specific acts or omissions that constitute the alleged ineffective assistance of counsel, the Court must determine whether such acts or omissions were outside the "wide

-8-

range of professionally competent assistance." *Id.* at 689. Generally, there is a strong presumption that counsel rendered adequate assistance. *Id.*

To demonstrate prejudice, the second component of the *Strickland* test, the defendant is required to prove that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* at 687. The Supreme Court has stated that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Court must ask whether a reasonable probability exists that, absent the errors alleged by the defendant, the factfinder would have had a reasonable doubt regarding the defendant's guilt, based upon the totality of the evidence before the jury. *Id.* at 695.

**2.   Failure to Call Witnesses Sought By McKoy**

McKoy asserts that his counsel's assistance was ineffective in failing to call witnesses at the evidence suppression hearing and failing to call his sister as a witness at trial. "The decision not to call a witness is a 'virtually

-9-

unchallengeable' decision of trial strategy . . . ." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation omitted).

### Sylvanna McKoy

McKoy asserts that counsel was ineffective in failing to call his sister Sylvanna as a witness at trial. McKoy asserts that she would have testified to impeach Birdine by explaining that she and Birdine had been involved in a relationship which gave Birdine a reason to want to lie about McKoy's involvement in the drug conspiracy.

The failure to call Sylvanna is not sufficient evidence of ineffective assistance by counsel for two reasons. First, her testimony would have only served to impeach the credibility of Birdine and would have been cumulative. Second, as McKoy's sister, her testimony was subject to an argument that it was shaped by familial loyalty. *See Staples*, 410 F.3d at 489 (finding that counsel's decision not to call the defendant's uncle to testify where the uncle would have been subject to

attack based upon familial loyalty was not ineffective assistance).

### Mr. Philmon

McKoy also asserts that counsel was ineffective in not calling Mr. Philmon, who testified at trial, to testify at the suppression hearing. McKoy asserts that Philmon would have testified at the hearing just as he testified at trial, contradicting statements by the arresting officers as to the number of people who had been in the gas station at the time of McKoy's arrest. The Court finds that the failure to call Philmon as a witness at the suppression hearing does not constitute ineffective assistance because his testimony would not have provided sufficient additional facts to undermine the officer's decision to link McKoy to the Intrepid in which the crack was found and to alleviate the officer's suspicions that were based on the facts that McKoy was driving the Intrepid. He was standing between the Intrepid that was unoccupied, its engine was running and had a loud radio playing, and the Mustang was occupied by two persons in the front seats and the back seat was filled with clothes that were in an undisturbed condition. Officer Gassaway reasonably concluded that McKoy's assertion that he had been riding in the Mustang was not true. Philmon was not in the parking lot and was not associated with either car. He did not testify that McKoy had been a passenger in the Mustang.

His testimony would not have contradicted the officer's testimony as to the primary elements upon which probable cause rested. Counsel's failure to call him to testify at the suppression hearing did not meet the high bar necessary to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

Further, defendant raised on appeal his claim that this was an illegal search.  The Court of Appeals carefully reviewed his claim and the evidence and found the claim to have no merit. Whether counsel specifically raised this issue at trial is of no consequence in view of the decision of the Court of Appeals. As the issues related to the suppression hearing were unsuccessfully raised at the suppression hearing and on appeal, the Court finds that defendant's claim of ineffective assistance of counsel in not renewing his motion to suppress the challenged evidence during trial is without merit and should be denied.

3. **Failure to Effectively Cross Examine and Properly Impeach Kevin Birdine**

McKoy next asserts that counsel failed to effectively cross examine Kevin Birdine.  McKoy's counsel impeached Birdine with his plea agreement, proffers and felony convictions.  Any impeachment with additional prior inconsistent statements would have been cumulative. *United States v. Watkins*, 486 F.3d 458, 466 (8th Cir. 2007)(*citing Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002)).

McKoy asserts that beyond just pointing out differences between the proffers and the trial testimony, his counsel should have gone further and asked why the testimony was different. As the Eighth Circuit stated in *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996), "[I]t is very difficult to show the trial outcome would have been different had specific questions been asked on cross examination, particularly where other trial testimony repeatedly corroborated the testimony of these two witnesses. In hindsight, there are few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would pass muster." McKoy has failed to show prejudice arising from counsel's cross-examination of Birdine.

**4.  Failure to Object to the Prosecution "Vouching" for Kevin Birdine.**

Next, McKoy alleges that statements made and testimony elicited by the government constituted improper bolstering of or vouching for Birdine's credibility. Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness. *See United States v. Beasley*, 102 F.3d

1440, 1449 (8th Cir. 1996), *cert. denied*, 137 L. Ed. 2d 1058, 117 S. Ct. 1856 (1997).

McKoy points to one instance of improper vouching where the government, in closing arguments, asked the jury to compare Birdine's proffer statements with his trial testimony and that the jury would find that they essentially correspond. McKoy asserts that this was improper vouching because Birdine's October 3, 2003, proffer statement was not admitted into evidence and could not be reviewed by the jury. With respect to the government's closing remarks, the prosecutor did not express a personal opinion regarding Birdine's credibility, did not make any guarantees of truthfulness, and did not imply that she knew something that the jury did not. *See Beasley*, 102 F.3d at 1449. The Court concludes that there was no impermissible vouching in this case.

### 5. Failing to Object to Jury Instruction No. 12

McKoy next asserts that his counsel was ineffective in failing to object to Jury Instruction No. 12. Specifically, he asserts that the jury should have been required to find the exact amount of drugs attributable to him. In actuality, the jury was required to make an exact finding as the verdict form specifically required the jury to find, "beyond a reasonable doubt that the defendant was responsible for and the conspiracy, as it pertained to the defendant involved less than 5 grams [of

-14-

crack cocaine] . . . at least 5 but less than 50 grams [of crack cocaine or] 50 grams or more [of crack cocaine]." The verdict form required the jury to find the quantities necessary to place him within the sentencing ranges detailed within the advisory sentencing guidelines. The jury made these quantity findings, and McKoy's counsel was not ineffective in failing to object to Instruction No. 12.

      **6.    Failure to Object to Judicial Findings of Drug Quantities**

McKoy next asserts that his counsel was ineffective in failing to challenge the judicial finding wherein this Court found McKoy was responsible for 1.5 kilograms of crack cocaine after the pre-sentence investigation report ("PSI") had determined that McKoy should be held responsible for 100.06 kilograms of crack cocaine. McKoy asserts that where the amount the Court held him responsible was just 1.5 percent of the amount recommended in the PSI, the finding of 1.5 kilograms lacks any basis, thereby rendering the finding unconstitutional and thereby rendering counsel's assistance ineffective.

A district court may estimate drug quantities so long as the estimate is supported by a preponderance of the evidence. *United States v. Judon*, 472 F.3d 575, 584 (8th Cir. 2006). In this case, the Court heard all of the evidence presented at trial and found that there was no question that McKoy was responsible for 1.5 kilograms of crack cocaine. *See United States v. Smith*,

429 F.3d 1179, 1181 (8th Cir. 2005)(finding "no clear error in the district court's reliance on trial testimony and its credibility findings in the determination of drug quantity"). The Court's finding was not clearly erroneous, and McKoy's counsel was not ineffective in failing to challenge the Court's finding that McKoy was responsible for 1.5 kilograms of crack cocaine.

### 7. Failure to Investigate and Adequately Cross Examine Officer Gassaway

McKoy next asserts that his counsel erred in failing to adequately investigate allegations of questionable activities by Officer Gassaway and to adequately cross examine Gassaway. Specifically, McKoy directs the Court to *United States v. Damper*, 347 F. Supp.2d 689 (Dec. 6, 2004)(J. Bataillon) and *United States v. Hatcher*, 275 F.3d 689 (8th Cir. 2001) as published cases from this district involving Officer Gassaway in which evidence was suppressed.

McKoy's trial began on May 24, 2004, more than six months before the decision in *Damper* was filed by the Court. His counsel could not be expected to know of this decision that had not yet been published. Further, it is not readily apparent that Officer Gassaway's actions as reported in Hatcher are relevant as to McKoy, and it would not be admissible. Finally, counsel did cross examine Officer Gassaway and attempted to impeach his testimony with reference to written reports that he had prepared

-16-

earlier.  The Court finds that the cross examination of Officer Gassaway by McKoy's counsel does not represent ineffective assistance.

### 8. Failure to Object to Questions from Judge & Jury

During trial, the Court allowed jurors to submit questions in writing to the bench.  These questions were then reviewed at sidebar with the attorneys who had an opportunity to object to any questions submitted.  The Court also directed questions to some witnesses.  After questions from either the judge or the jury, the Court allowed both party's counsel an opportunity to further develop any subject raised by these questions.  McKoy asserts that his counsel was ineffective in failing to object to these questions.

The Eighth Circuit Court of Appeals has found that permitting jurors to question witnesses is not itself plainly erroneous and has "expressed no opinion on the appearance and propriety of juror questioning in general." *United States v. Johnson*, 892 F.2d 707, 710 (8th Cir. 1989).  Since the Eighth Circuit has expressed no opinion, the Court finds that counsel was not ineffective in not generally objecting to this Court's custom of allowing jurors to submit written questions for witnesses and of the Court also asking questions of witnesses.

This Court was the trier of facts and although the hearing on the motion to suppress was heard before the Magistrate

Judge, the record is substantial as to what occurred.  On the basis of the record and the Court's presence during the trial of the case, it appeared that all counsel acted properly and thoroughly investigated the case and presented it to the Court. All proper motions were filed and heard.  The fact that the defendant did not testify at a motion hearing, on advice of counsel, if in fact that occurred, was a legal decision made by counsel which is not subject to attack here.  Counsel fully cross-examined all government witnesses and was fully informed as to the nature of defendant's position.

The Court finds that McKoy has not shown that any of his counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  In addition, the defendant has not shown prejudice.  This Court does not believe that the errors of any counsel, if there were any, were so serious as to deprive defendant of a fair trial. Accordingly, defendant's requests for relief under § 2255 (Filing Nos. 334 and 346) will be denied.

Having found that all of defendant's motions (Filing Nos. 330, 331, 334, 335, 337, 338, 343, 344, 345 and 346) should

be denied, a separate order will be entered in accordance with this memorandum opinion.

DATED this 8th day of August, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court